**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| SLOAN HAMIL, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | |
| | * | CIVIL ACTION NO. 22-00366-KD-B |
| ACTS RETIREMENT-LIFE | * | |
| COMMUNITIES, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |

### REPORT AND RECOMMENDATION

This action is before the Court on Defendants Acts Retirement-Life Communities, Inc., ("Acts"), Presbyterian Retirement Corporation, Inc., ("PRC"), and Westminster Village's ("Westminster") motion to dismiss Plaintiffs' First Amended Complaint. (Doc. 12). The motion, which has been fully briefed, is before the undersigned Magistrate Judge on referral pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned finds that Defendants' motion to dismiss is due to be granted in part and denied in part.

### I. PROCDEDURAL BACKGROUND

Plaintiffs Sloan Hamil, Katherine Howerin (aka Lott), Jennifer Sigley, and Tina Wolfe, initiated this action by filing a complaint against Defendants Acts-Retirement-Life Communities, Inc., Presbyterian Retirement Corporation, Inc., and Westminster

Village. (Doc. 1). Plaintiffs allege that Defendants violated Title II of the Civil Rights Act of 1964 and various state laws. (Id.).

Upon reviewing Plaintiffs' complaint, the Court, in an order dated October 12, 2022 (doc.8), struck Plaintiffs' complaint as an impermissible shotgun pleading. In striking Plaintiffs' complaint, the Court determined that the complaint made "the fundamental error of incorporating all paragraphs in each count, thus "causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." (Doc. 8). The Court noted that "[t]his matter of pleading "imposes a heavy burden on the trial court, for it must sift each count for the allegations that pertain to the cause of action purportedly stated and, in the process, disregard the allegations that only pertain to the incorporated counts."" (Id. at 2)[1].

The Court further noted that Plaintiffs repeatedly combined their distinct claims by bringing a single count by all four Plaintiffs against all three Defendants without specifying which factual allegations were intended to support each Plaintiff's

---

[1] The Court concluded that discerning the precise factual basis for each of Plaintiffs' claims would be nearly impossible because the complaint was oppressively and unnecessarily long, consisting of 105 pages composed of 358 numbered paragraphs, verbose, repetitive and conclusory, and it contained numerous legal citations and legal arguments that are inappropriate in a complaint. (Doc. 8 at 2).

cause of action against each Defendant, and without making clear which of the Defendants are alleged to be responsible for each of the relevant acts or omissions alleged. (Id. at 4). In striking Plaintiffs' complaint as an impermissible shotgun pleading, the Court granted Plaintiffs' leave to file an amended complaint in order to correct the deficiencies detailed in the Court's Order. (Id. at 4-5).

**A. Amended Complaint**

Pursuant to the Court's directives, Plaintiffs filed their first amended complaint, which is the operative pleading in this case. (Doc. 9). In the amended complaint, which was shortened from 105 pages to 40 pages, Plaintiffs assert fifteen (15) causes of action against Defendants Presbyterian Retirement Corporation, PRC and Westminster Village. (Id. at 23-37). Plaintiffs all allege a Title VII religious accommodation claim, a Title VII disparate treatment claim, a Title VII hostile work environment claim, and a Title VII religious harassment claim against each Defendant. (Id. at 23-29). Additionally, Plaintiffs assert state law claims, including misrepresentation, suppression, deceit, civil conspiracy, wantonness, breach of employment contract, breach of duty of loyalty, unjust enrichment, disgorgement, and officer and director liability against all Defendants. (Id. at 29-37).

Plaintiffs' factual allegations include the following:

Owned by Acts, Westminster Village is an assisted living and nursing care service provider located in Spanish Fort, Alabama. Defendants' business primarily revolves around providing therapy, nursing care, and personalized living-assistance to individuals in need. Defendants were the employers of each respective Plaintiff.

In August 2010, Ms. Wolfe was hired by Defendants, where she worked as a Registered Nurse Supervisor at the Spanish Fort facility.

In May 2013, Ms. Howerin was hired by Defendants, where she worked as the Director of Nursing at the Spanish Fort facility.

In November 2016, Ms. Sigley was hired by Defendants, where she worked as the Assistant Director of Nursing at the Spanish Fort facility.

In October 2018, Ms. Hamil was hired by Defendants, where she worked as a Speech Language Pathologist at the Spanish Fort facility.

Plaintiffs were hard workers who performed their duties diligently and only furthered Defendants' business. Plaintiffs possess sincerely held religious beliefs as Christians.

In the Spring of 2020, the novel coronarvirus ("COVID-19") spread rapidly around the world impacting billions of individuals, including those situated in the southeastern region of the United States ("U.S."). . .

On July 30, 2021, Defendant notified all employees and residents that it planned to implement a mandatory vaccination policy ("Vaccination Policy") for employees:

"The best level of protection is vaccination. If you are not yet vaccinated and now wish to receive a vaccination, please contact the Wellness Office at your community. For several months we have shared our intent to mandate the COVID-19 vaccine for staff in the near future. Please be advised that we are moving forward in implementing a mandatory COVID-19 vaccination policy (consistent with

actions by other employers and health care providers) for employees, similar to our flu vaccination policy. All employees working in OakBridge Terrace or WillowBrooke Court or providing direct care to residents must be fully vaccinated against COVID-19 by October 1, 2021. All other employees must be fully vaccinated against COVID-19 by November 1, 2021.". . .

Ms. Sigley filed her first religious exemption request on August 16, 2021, and her COVID-19 vaccination declination form on August 24, 2021. Ms. Sigley's request was denied on September 3, 2021. She re-submitted her exemption on September 10, 2021, and the exemption was approved on September 14, 2021. Not even one-month later, Ms. Sigley's request was rescinded on October 7, 2021, and she was placed on inactive status from Defendants' business beginning on November 1, 2021, and was subsequently terminated on November 30, 2021."

Ms. Howerin filed her COVID-19 vaccination declination form on August 16, 2021, and requested a religious exemption. Ms. Howerin's religious exemption request was initially granted; however, Defendants rescinded Ms. Howerin's religious exemption on October 7, 2021. Ms. Howerin was placed on inactive status on November 1, 2021, and was subsequently terminated on November 30, 2021.

Ms. Hamil filed her COVID-19 vaccination declination form on August 19, 2021, requesting religious and medical exemptions. Defendants denied Ms. Hamil's exemption requests on September 23, 2021, which Ms. Hamil sent a letter of appeal on September 29, 2021. On October 7, 2021, Defendants denied Ms. Hamil's pending appeal. Ms. Hamil was placed on inactive status on November 1, 2021, and was subsequently terminated on November 30, 2021.

Ms. Wolfe filed her COVID-19 vaccination declination form on August 19, 2021, requesting religious and medical exemptions. Defendants originally denied Ms. Wolfe's exemption requests then granted said request on September 15th. Subsequently, on October 7, 2021, Defendants rescinded the granted exemption. Ms.

Wolfe was placed on inactive status on November 1, 2021, and was subsequently terminated on November 30, 2021.

Plaintiffs undertook all requisite and proper procedures to engage in the exemption and accommodation process with Defendants. Such actions taken by Plaintiff includes but was not limited to: (i) directly informing Defendants, its supervisors, managers, and/or agents of their sincerely held religious beliefs; (ii) providing a proof of religion letters from a member of the clergy or expressing a willingness to obtain a proof of religion letter from their pastor attesting to their religious beliefs; (iii) directly voicing their concerns as to the compulsory vaccines program that was in direct opposition to their religious beliefs; (iv) providing Defendants, its supervisors, managers, and/or agents with formal documentation of their religious exemption request that identified their sincerely held religious beliefs or medical complications; and/or (v) attempting to meet and engage in meaningful discussions with Defendant, its supervisors, managers, and/or agents regarding their sincerely held religious beliefs and to identify any potential accommodations.

(Id. at 4-7).

On September 21, 2021, Mr. Kaign [Act Retirement-Life Communities Executive Vice President and Chief Administrative Officer] sent out a memorandum regarding vaccine status and work protocols for staff members to all Act's members on the management council, executive directors, corporate directors, and administrators. In this memorandum, marked as Exhibit E, Mr. Kaign states that the organization is "committed to a fully vaccinated workforce allowing only those staff with authorized religious or medical declinations to be exempted from the COVID-19 vaccine." The memorandum goes on to provide two (2) deadline dates for staff members: (i) October 1, 2021, for clinical staff and (ii) November 1, 2021, for all other staff.. . .


To achieve this goal of high vaccination records among staff and residents, on October 22, 2021, Jefferson Kaign ("Mr. Kaign"), Act Retirement-Life Communities Executive Vice President and Chief Administrative

Officer, sent a letter addressed to Ms. Sigley stating that she is to be placed on inactive leave and subsequently terminated if she is not vaccinated by Defendant's deadline. The letter goes on to state that Ms. Sigley "consider getting vaccinated and joining the over 92% of staff and 97% of residents that have been safely vaccinated.". . . .

Defendants' Board of Directors flew in the Regional Vice President, George Bryan, the day before their terminations were divulged, gathered PRC and/or Westminster Village's leadership team together and stated that "the Board of Directors have determined that there were too many accommodation requests being granted across the board at its' twenty-six (26) facilities so they were going to blanket deny all of them and/or rescind the previously issued exemptions." At Westminster Village facility alone, reportedly there was reported less than six (6) total exemptions requested. Mr. Bryan went on to say that "if they denied receiving the vaccine, they would be in lawsuits for years to come and that they would drag them out". Reportedly less than six (6) total exemptions at Defendants' Spanish Fort facility were requested. Defendants employ more than 8,000 individuals.

Furthermore, two (2) Plaintiffs took part in a conference call with Defendants and were forced to wear personal protection equipment ("PPE") during the call and were informed by Defendants' managers, supervisors, and/or executives instructed Plaintiffs and other persons at the meeting to "shame any unvaccinated person into submission."

(Id. at 16-19).


Defendants did not meet with Plaintiffs directly regarding their exemption requests despite Plaintiffs expressive willingness; rather, Defendants only provided communications inquiring into the nature of their religious beliefs, denials of those exemption requests, and communications dictating three reasons for denials in such correspondences to Plaintiffs.

Defendants' refusal to grant Plaintiffs exemption requests and engage in the accommodations process was allegedly due to Defendants' determination that "Plaintiffs constituted an undue hardship" on the business. Plaintiffs were terminated soon thereafter.

Almost one year later, in September 2022, Plaintiffs received a correspondence signed by Defendant Acts' Senior Vice President and Chief Human Resources Officer, Deidre E. Groenen, and is dated on September 2, 2022. . . .

In this correspondence[,] Defendants' state that the reason for Plaintiffs' termination was because Defendants were following guidance from government sources, given the scientific consensus at the time, and their "sacred obligation to the safety of [their] residents." The letter goes on to state that Defendant has followed the evolution of the diseases, acknowledged guidance, and states that the "current science suggests that the COVID-19 pandemic and, critically, the risk of severe illness and death for [Defendants'] residents is beginning to meaningfully recede." Accordingly, Defendants are now prepared to "accommodate COVID-19 medical and religious exemptions in all settings, without causing an undue hardship or burden on the organization."

Defendants determined Plaintiffs could not be accommodated at their facilities because Plaintiffs would constitute an undue hardship on Defendants' businesses. As a result of this determination, Plaintiffs were subsequently discharged from their positions on the basis of three primary reasons.

Defendants cited the following three reasons as the basis to terminate Plaintiffs and other situated persons: (1) there was an alarming rise in COVID-19 cases throughout the U.S.; (2) an alarming rise in COVID-19 cases among staff and residents in the facility; and (3) there was new information pertaining to the virus and vaccines. These explicit reasons were provided to Plaintiffs directly as to why they were not to be accommodated but were inconsistent given objective data available at the time and data reported by Defendants themselves.

(Id. at 8-9).

**B. Defendants' Motion to Dismiss**

Currently pending before the Court is Defendants' Motion to Dismiss Plaintiffs' amended complaint. (Doc. 12). In their motion, Defendants argue that Plaintiffs' amended complaint is still an impermissible shotgun pleading and is thus due to be dismissed. (Id. at 7). Defendants assert that because the amended complaint incorporates all facts into each count without specifying how the facts support each claim, "it is nearly impossible for the Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief against which Defendant. (Id. at 10). Defendants further argue that Plaintiffs level multiple complaints against multiple Defendants without specifying which of the "three Defendants committed the alleged wrongs". (Id.). Defendants also assert that Plaintiffs interchangeably switch from the use of "Defendant" and "Defendants" and "Plaintiff" and "Plaintiffs" without making clear which specific party is being referenced. (Id.). Additionally, Defendants contend that Plaintiffs' Title VII claims of disparate treatment, hostile work environment, and religious harassment are barred because they go beyond the scope of Plaintiffs' EEOC charges. (Id. at 15). Lastly, Defendants contend that Plaintiffs' various state law claims are improperly pled and

as a result, they should be dismissed for failure to state a claim. (Id. at 18-19).

## II.  **STANDARD OF REVIEW**

Rule 8(a)(b) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed 929 (2007) (citation omitted). A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.

To survive a motion to dismiss, the factual allegations must be "plausible" and must be enough to raise a right to relief beyond the speculative level." Id. at 555. See also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation remarks omitted). In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and take them in the light most favorable to the plaintiffs. Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007),

but [l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted); see also Doe v. Samford Univ., 29 F.4th 675, 687-688(11th Cir. 2022)(the plaintiff's allegations that an investigative report contained "prejudicial" and "inflammatory" statements about him are "not entitled to the assumption of truth" because these allegations are "labels" and "[un]supported by factual allegations." (citations omitted).

When considering motions to dismiss, the Court engages in a two-step approach: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the

plaintiff would ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

Before turning to the arguments raised in Defendants' motion to dismiss, the undersigned notes that the motion relies on documentary evidence not attached to the complaint, namely Plaintiffs' Charges of Discrimination filed with EEOC. (Doc. 12 at 12-1, 12-2, 12-3, 12-4). Generally, when a court considers matters outside the pleadings, the motion to dismiss is converted into a motion for summary judgment. See Fed. R. Civ. P. 12(d). However, a court may consider evidence outside the pleadings on a motion to dismiss if the complaint effectively incorporates the extrinsic evidence by reference. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); see Allen v. USAA Cas. Ins. Co., 790 F.3d 1274, 1278 (11th Cir. 2015). A court may consider a document incorporated by reference where "it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010).

Here, the court can consider the EEOC charges offered in support of the motion to dismiss without converting the motion into a motion for summary judgment because the amended complaint references the EEOC charges, the EEOC charges are central to Plaintiffs' Title VII claims and Plaintiffs have not challenged the authenticity of the EEOC charges but has also relied upon them

in opposing Defendants' motion.  Thus, they are properly before
the Court.  See Booth v. City of Roswell, 754 F. App'x 834, 836
(11th Cir. 2018)(The Court "may consider a document attached to a
motion to dismiss, without converting it to a motion for summary
judgment, when the plaintiff refers to the document in his
complaint, it is central to his claims, and there is no reasonable
dispute as to the authenticity of the document."); Horne v. Potter,
392 F. App'x 800, 802 (11th Cir. 2010)(per curiam)(holding that
district court properly considered right-to-sue letter attached to
defendant's motion to dismiss because it was central to plaintiff's
complaint and undisputed.)

III. **DISCUSSION**

As noted, Defendants contend that Plaintiffs amended complaint
does not comply with the Court's pleading directives and is subject
to dismissal under Fed. R. Civ. P. 12(b)(6).  (Doc. 12).  The Court
will first address Defendants' assertion that Plaintiffs have
failed to comply with the Court's pleading directives and will
then address the Rule 12(b) arguments.

A. **The Court's Pleading Directives**

Defendants contend that Plaintiffs' amended complaint should be
stricken because it still constitutes "an impermissible shotgun
pleading".  According to Defendants, Plaintiffs' amended complaint
realleges and incorporates by reference paragraphs 1-74 into each
count and then list the elements of each claim "without delineating

13

which allegations pertain to which count" and thus make it "nearly impossible for the Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief against which Defendant. (Id. at 10). Defendants also assert that in the amended complaint, Plaintiffs use the terms "Defendant" or "Defendants" without specifying which of the three Defendants committed the alleged wrongs, and that the Plaintiffs fail to provide specific allegations supporting their individual claims.

In response, Plaintiffs assert that Defendants are attempting to "weaponize[e]" the Court' order in "an effort to exculpate themselves entirely of liability for the alleged unlawful conduct prior to the parties engaging in the discovery process". (Doc. 25 at 6). Plaintiffs further contend that they were employed by Defendants Acts, PRC and Westminster Village, and that all four Plaintiffs physically worked at Westminster Village facility in Spanish Fort. (Id. at 2). According to Plaintiffs, Defendants have created confusion about Plaintiffs' actual employer because during the EEOC proceedings and in their instant motion to dismiss, they have asserted that Plaintiffs were employed by PRC; however, Defendants are actually 'alter egos' of one another and they acted in complete and total control of the Board of Directors, Acts' directors, and /or Acts' seniors. (Id.).

Upon review of Plaintiffs' amended complaint, there is no

question that the amended complaint is not the model of clarity. While the amended complaint has been shortened considerably, it is still replete with conclusory assertions which fall short of being "facially plausible", and which unnecessarily increase the length of the pleading. Also, it incorporates paragraphs 1-74 into every count without clearly setting forth which factual allegations are applicable to each of the fifteen claims being asserted.

Notwithstanding, the amended complaint should not be uniformly dismissed as a shotgun pleading when it is not "virtually impossible" to discern which factual allegations support the various claims of each Plaintiff. Inform Inc. v. Google LLC, 2022 WL 3703958, at *4 (11th Cir. Aug. 26, 2022) (finding that while the amended complaint displayed some of the characteristics of a shotgun pleading, it gave defendants' adequate notice of claims against them) (citing Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015)).  This is particularly true where the Plaintiffs all contend that they were subjected to the same alleged wrongful conduct, namely the policy requiring mandatory vaccination, and Defendants have in turn demonstrated that they are on notice of the claims asserted by each Plaintiff against them, and the facts that purport to support each claim. See N.R. v. Sch. Bd. of Okaloosa County, 418 F. Supp. 3d 957, 976, n. 13) (N.D. Fla., September 30, 2019)(Court noted that several counts in the complaint incorporated all 139 paragraphs of the

factual allegations and included multiple defendants, that the 99 page complaint was an example of poor pleading practice and that attempting to decipher the specific allegations against each defendant unduly prolonged the court's review of the motions to dismiss; however, the court declined to dismiss the complaint as a shotgun pleading or further delay discovery for re-pleading since the court was able to review the claims substantively.). Accordingly, the Court finds that while the amended complaint is not a model pleading, it provides Defendants with adequate notice of the claims against them.

## B. Plaintiffs' Employers

Much of the parties' briefing focuses on whether Plaintiffs have adequately identified their correct employer. In their amended complaint, Plaintiffs assert that they were employed by Defendants Acts, PRC, and Westminster Village, that they physically worked at the Westminster Village, and that Acts appears to be the parent corporation that exercises dominance and control over PRC and Westminster Village. (Doc. 9 at 3). Plaintiffs allege that on September 21, 2021, Mr. Kaign, Act's Executive Vice President and Chief Administrative Officer, sent out a memorandum advising that the organization was committed to a fully vaccinated workforce and only staff with authorized religious or medical declinations would be exempted from the COVID-19 vaccine. According to Plaintiffs, the memorandum provided a deadline for exemption requests as (i)

October 1, 2021, for clinical staff and (ii) November 1, 2021, for all other staff. (Id. at 16). Plaintiffs allege that each of them submitted religious exemption requests which were initially approved, and later rescinded. Plaintiffs contend that on October 22, 2021, Mr. Kaign sent Plaintiff Sigley a letter stating that she was being placed on inactive leave and would be terminated if she was not vaccinated by Defendant's deadline. (Id. at 17). According to Plaintiffs, Defendants rescinded their exemptions, placed them on inactive status, and then terminated them after they refused to be vaccinated. (Id. at 8).

Plaintiffs further allege that in September 2022, they received correspondence from Ms. Groenen, Acts' Senior Vice President and Chief Human Resources Officer, advising that Plaintiffs had been terminated because Defendants were following guidance from government sources, and that current science suggest[ed] that the Covid-19 pandemic and the risk of severe illness and death of residents was beginning to recede; thus, the Defendants were now prepared to "accommodate COVID-19 medical and religious exemptions in all settings, without causing an undue hardship or burden on the organization. (Id. at 9). In a footnote, Plaintiffs assert that they do not know the actual scope of the relationship between the three Defendants, that they believe the Defendants were acting in unison and that Acts is the parent company and used its ownership interest to express domination and control of its

subsidiaries in employment policies and training and the alleged wrongdoing at the Westminister Village. (Id. at 2, ftnte 3). Thus, Plaintiffs contend they should be permitted to pierce the corporate veil. (Id. at 4-6).

Defendants contend that Plaintiffs have failed to specify which Defendants are responsible for which acts or omissions and have created confusion by using the terms "Defendant" and "Defendants" interchangeably without clarifying which specific Defendant they are referencing. Defendants further contend that Plaintiffs have failed to allege sufficient facts to allow the veil-piercing theory to survive. (Doc. 21 at 5-6).

In the EEOC charges that are attached to Defendants' motion, Plaintiffs identified Acts as their employer, and in their amended complaint, they allege that the three entities, Acts, PRC and Westminster, served as their employers although at this juncture, they do not know the actual scope of the relationship between the three entities[2]. They also set forth facts that suggest that Acts exercised some control over employment decisions at the

_____

[2] The undersigned recognizes that "[a]s a general rule, a parent company ... is not liable for the conduct of its wholly owned subsidiaries .... except when '1) it is appropriate to pierce the corporate veil; 2) there is apparent or ostensible agency; or 3) there is a joint venture.'" In re Lett, 2021 Bankr. LEXIS 2466, 2021 WL 4256375, *5 (Bank. N.D. Ga. Sept. 8, 2021). Here, Plaintiffs have alleged more than the relatedness of the entities.

Westminster facility, which is the location where Plaintiffs were physically employed. For instance, Plaintiffs allege that Act's officials send out memorandums containing deadlines for requesting COVID-19 medical and religious exemptions, and on October 22, 2021, informed Plaintiff Sigley that she was being placed on inactive leave and would be terminated if she was not vaccinated by the stated deadline. Plaintiffs further allege that nearly a year later, an Act's official wrote and apprised them that the Company could now accommodate their exemption requests; thus, they could return to work. These allegations suffice to raise an inference that Acts exercised some degree of control over Plaintiffs' employment at the Westminster facility so as to warrant discovery on this issue.

And, with respect to PRC, there appears to be no dispute that PRC employed Plaintiffs. According to Defendants, they acknowledged in their response to Plaintiffs' EEOC charges of discrimination that Plaintiffs were all employed by PRC. (Doc. 21 at 6). Defendants' acknowledgement and Plaintiffs' assertion that PRC was also one of their employers suffices to establish that PRC is a proper employer in this action. Plaintiffs also identify Westminster as one of their employers and assert that this is the facility at which they were hired and at which they were physically employed, and that Westminster acted in concert with Acts and PRC to make employment decisions at the facility. Plaintiffs'

assertions at this early stage of the litigation suffice to establish a plausible claim that Acts, PRC and Westminster were their joint employers. Accordingly, to the extent that Defendants assert that Plaintiffs' amended complaint should be dismissed for failure to identify which Defendant was their employer and thus responsible for the violations alleged in Plaintiffs' amended complaint, the motion should be denied.

### C. Title VII Exhaustion Requirement

Defendants also argue that several of Plaintiffs' Title VII claims are administratively barred and thus due to be dismissed. (Doc. 12). Defendants note that while in Count two, Plaintiffs allege that they were discriminated against because of their religious beliefs, in Count three, Plaintiffs allege hostile work environment due to their religion, and in Count three, Plaintiffs allege harassment due to their religion, none of these allegations were included in Plaintiffs' respective EEOC charges of discrimination and none of them could have reasonably been expected to grow out of the EEOC's investigation of their charges; thus, they are barred.

In response, Plaintiffs assert that they filed their charges without the aid of counsel, and that they were not required to specifically articulate each discrete act of alleged discrimination against them in their respective charges. (Doc. 25 at 14). Plaintiffs contend that because these alleged discrete

acts were occurring simultaneously at the time of Act's universal decision to deny every employee's religious and/or medical exemption and instead terminate them, such additional claims are reasonably related to one another and "grow out" of each Plaintiff's charges of discrimination.  (Id. at 14.)

"Title VII prohibits employers from discriminating against their employees on the basis of religion."  Bailey v. Metro Ambulance Servs., Inc., 992 F.3d 1265, 1272 (11th Cir. 2021) (per curiam) (citing 42 U.S.C. § 2000e-2(a)(1)).  "The term 'religion' in Title VII's prohibition against religious discrimination 'includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observa[nce] or practice without undue hardship on the conduct of the employer's business.'"  Id. at 1275 (quoting 42 U.S.C. § 2000e(j)).  Thus, "Title VII requires that an employer 'make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship.'"  Lake v. B.F. Goodrich Co., 837 F.2d 449, 450 (11th Cir. 1988) (quoting Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 75 (1977)).

"A plaintiff can bring a Title VII religious discrimination claim based on disparate treatment and/or a failure to accommodate [her] religious beliefs."  Lindsey v. Bridge Rehab, Inc., 369 F. Supp. 3d 1204, 1210 (N.D. Ala. 2019).  "A plaintiff may also bring

a Title VII religious discrimination claim based on a discriminatorily hostile work environment." Harris v. Acosta, 2018 U.S. Dist. LEXIS 237415, at *14-15, 2018 WL 7080617, at *5 (N.D. Ga. Jan. 9, 2018), report and recommendation adopted, 2018 U.S. Dist. LEXIS 238876, 2018 WL 7082541 (N.D. Ga. Feb. 5, 2018); see, e.g., Jones v. United Space All., L.L.C., 170 F. App'x 52, 55 (11th Cir. 2006) (per curiam). To establish a claim of a hostile work environment based on religious harassment, an employee must prove "that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Alhallaq v. Radha Soami Trading, LLC, 484 F. App'x 293, 295 (11th Cir. 2012) (per curiam) (quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)).

Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC "within" 180 days "after the alleged unlawful employment practice occurred[,]" and by filing a civil action within ninety days after receipt of a right-to-sue notice from the EEOC. Abbott v. Austal USA, LLC, 2023 U.S. Dist. LEXIS 99009, at *37, 2023 WL 3868571, at *13 (S.D. Ala. June 7, 2023) (DuBose, J.) (citing 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1)). The purpose of this exhaustion requirement is to afford the EEOC "the first

opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983).

"In light of the purpose of the EEOC exhaustion requirement, . . . a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Gregory v. Ga. Dep't of Hum. Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (quotation omitted). Thus, in determining whether a plaintiff has exhausted his administrative remedies, "the 'proper inquiry' is whether the 'plaintiff's complaint is like or related to, or grew out of, the allegations contained in the EEOC charge.'" Batson v. Salvation Army, 897 F.3d 1320, 1328 (11th Cir. 2018) (citation and alterations omitted). "While a plaintiff is not permitted to allege new acts of discrimination in a complaint that were not raised in his EEOC Charge, the scope of an EEOC Charge 'should not be strictly interpreted' and any claim that 'can reasonably be expected to grow out of the charge of discrimination' is allowed, including claims that 'amplify, clarify, or more clearly focus the allegations in the EEOC charge.'" Abbott, 2023 U.S. Dist. LEXIS 99009, at *37, 2023 WL 3868571, at *13 (quoting Gregory, 355 F.3d at 1280).

"Generally, a Title VII failure to accommodate claim is

distinct from other types of Title VII discrimination[.]" Id., 2023 U.S. Dist. LEXIS 99009, at *38, 2023 WL 3868571, at *14; see, e.g., Tillery v. ATSI, Inc., 2003 U.S. Dist. LEXIS 7119, at *20, 2003 WL 25699080, at *6 (N.D. Ala. Apr. 14, 2003) ("An employer may discriminate on the basis of religion in at least three ways: by subjecting an employee who practices the doctrines of an unfavored religious faith to disparate treatment; by failing to accommodate particular religious practices or requirements; or by harassing the employee."), aff'd, 97 F. App'x 906 (11th Cir. 2004) (per curiam); Bailey, 992 F.3d at 1272-77 (separately addressing claims of disparate treatment based on religion under two distinct theories: "a traditional disparate-treatment claim" based on plaintiff's claims that he was treated "worse than non-Rastafarians because he was a Rastafarian[,]" and "a failure-to-reasonably-accommodate disparate-treatment claim" based on employer's "alleged failure to provide [plaintiff] with a reasonable accommodation of his religious practice of wearing a beard"); Jean-Pierre v. Naples Cmty. Hosp., Inc., 817 F. App'x 822, 828 (11th Cir. 2020) (per curiam) (acknowledging that an employee asserting a claim relating to religious beliefs or practices "may plead two separate claims for discrimination—one based on his employer's failure to accommodate and another based on other grounds," but to do so successfully, the employee must allege a distinct factual basis for each claim); Jean Pierre v.

Park Hotels & Resort, Inc., 2017 U.S. Dist. LEXIS 164515, at *6, 2017 WL 4408972, at *2 (S.D. Fla. Oct. 4, 2017) (dismissing plaintiff's hostile work environment claim for failure to exhaust administrative remedies because "her charge of discrimination [was] wholly silent as to any alleged harassment based on her religion"); cf. Ball v. Target Corp., 2019 U.S. Dist. LEXIS 249761, at *19, 2019 WL 13273217, at *7 (N.D. Ga. Mar. 4, 2019) ("A specific claim of discrimination, such as, racially discriminatory disparate treatment or retaliatory disparate treatment, presents a separate and distinct theory of recovery from other alleged acts of racial discrimination or retaliation, such as, a claim of racially hostile work environment or harassment. Each allegation of a type of discriminatory act raises a new theory of liability which requires administrative exhaustion."), report and recommendation adopted, 2019 U.S. Dist. LEXIS 249765, 2019 WL 13273186 (N.D. Ga. Mar. 29, 2019); Howard v. City of Robertsdale, 2004 U.S. Dist. LEXIS 31209, at *20, 2004 WL 5551812, at *7 (S.D. Ala. Dec. 9, 2004) ("The law clearly makes a distinction between hostile work environment claims and claims of adverse employment action as separate types of discrimination under Title VII[.]"), aff'd, 168 F. App'x 883 (11th Cir. 2006) (per curiam); Blalock v. Dale Cty. Bd. of Educ., 84 F. Supp. 2d 1291, 1302 (M.D. Ala. 1999) (finding that claims of disparate pay and disparate treatment in EEOC charge did not satisfy exhaustion requirement for hostile

work environment claim, because the latter "is a separate and distinct theory of liability with different elements of proof," and plaintiff's EEOC charge did "not allude to or even generally reference a hostile work environment theory"); <u>Smith v. Panera Bread</u>, 2009 U.S. Dist. LEXIS 135970, at *9-10, 2009 WL 10667191, at *4 (S.D. Fla. Aug. 11, 2009) (holding that harassment/hostile work environment claims could not have reasonably been expected to grow out of plaintiff's EEOC charge, which "only alleged a discharge based on race, indicated that no reasons were given for the discharge, and stated that the discrimination began and ended on the same day" plaintiff was discharged).

As detailed above, Defendants contend that Plaintiffs' claims of religious discrimination via disparate treatment, religiously hostile work environment, and harassment on religious grounds could not reasonably have been expected to grow out of the allegations in Plaintiffs' EEOC charges, and that Plaintiffs have therefore failed to exhaust their administrative remedies as to those claims. Defendants' argument is well taken.

Plaintiffs Hamil, Lott, Sigley and Wolf filed near identical charges of discrimination with the EEOC on February 7, 2021, January 22, 2022, January 24, 2022, and January 22, 2022 respectively. (<u>See</u> Doc. 12-1; 12-2; 12-2; 12-4). In the "discrimination based on" section of their EEOC charges, each Plaintiff listed "religion". (<u>Id.</u>). Plaintiff Hamil listed Acts

Retirement Life Communities and Westminster Village as her employers, Lott listed Westminster Village and Acts Life-Retirement Community as her employers, Sigley listed Westminster Acts Retirement-Life Communities as her employers, and Wolf listed Westminster Village Acts Retirement-Life Communities as her employers. (Id.). In the "particulars" section, each Plaintiff asserted that the employer notified employees that all employees would be required to be vaccinated, that each held a religious belief that conflicted with the employer's vaccination requirement, that each notified their employer of their religious belief and requested a religious exemption. Hamil asserts her request was denied and she was terminated on November 1, 2021. Plaintiffs Lott, Sigley, and Wolf all assert that their exemption request was originally granted but was later rescinded and that they were terminated on November 30, 2022. (Docs. 12-1, 12-2, 12-3, 12-4).

The Court finds that Plaintiffs' EEOC charges are limited to the Title VII failure to accommodate allegations raised in their respective EEOC charges. A searching review of Plaintiffs' EEOC charges reflects that none of the charges make any reference to or include any facts that suggest hostile work environment, harassment, or disparate treatment or impact based on Plaintiff's religious beliefs. Indeed, Plaintiffs' EEOC charges do not reference or allege religious-based discrimination under a theory

separate and apart from their claim that Defendants failed to reasonably accommodate their religious beliefs with respect to the vaccination mandate and terminated them when they failed to be vaccinated as mandated.  These EEOC charges do not allege nor remotely suggest the existence of a hostile work environment or harassment by anyone at the Westminster facility.

To the contrary, Plaintiffs' EEOC charges center around their request for an exemption to the vaccination mandate, the Defendants' failure to accommodate their requests and the resulting termination of their employment. While Plaintiffs argue that each of their Title VII claims are sufficiently intertwined so as to fall within the allowable judicial scope of the complaint, the claims raised in Plaintiffs' amended complaint are not like or related to, nor do they reasonably ground out of, the allegations in Plaintiffs' EEOC charge.  Simply put, the EEOC charges are devoid of any facts from which would have reasonably been expected to prompt the EEOC to investigate claims other than the Title VII claim based on Defendants' alleged failure to accommodate Plaintiff's religious beliefs and their resulting termination. Accordingly, Counts II through IV of Plaintiffs' amended complaint are due to be dismissed because Plaintiffs failed to timely file EEOC charges with respect to the claims raised in those counts; thus, they failed to exhaust their administrative remedies as to

those claims.  <u>Patterson</u>, 38 F.4th at 1346.[3]

### D. **Plaintiffs' State Law Claims**

### 1. **Fraud related claims**

Defendants contend that Plaintiffs' claims for fraudulent misrepresentation, fraudulent suppression, and negligent or wanton misrepresentation and suppression fail to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)[4].

> A Section 6-5-101 fraudulent misrepresentation claim "requires (1) a false representation (2) of a material fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation ... <u>Standard Furniture Mfg. Co. v. Reed</u>, 572 So. 2d 389, 391 (Ala. 1990)." <u>Avendano v. Shaw</u>, 2022 Ala. LEXIS 70, 2022 WL 3572663 (Ala. Aug. 19, 2022). A claim for deceit "is extremely similar to [a misrepresentation claim], except that 'a[n] action for deceit, under ... § 6-5-103 and § 6-5-104, results from either a willful or reckless misrepresentation or a suppression of material facts with an intent to mislead,' <u>Whitlow v. Bruno's Inc.</u>, 567 So. 2d 1235, 1241 (Ala. 1990), while an action for misrepresentation of material fact can be based on an unintentional misrepresentation. [§ 6-5-101]." <u>Garber v. Nationwide Mut. Ins. Co.</u>, 2021 U.S. Dist. LEXIS 233785, 2021 WL

---

[3] Because the undersigned finds that Counts II, III, and IV are due to be dismissed because they are beyond the scope of Plaintiffs' EEOC charges, the undersigned need not address Defendants' assertion that Plaintiff has failed to state a claim upon which relief can be granted with respect to Counts III and IV.

[4] When alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires a plaintiff to "plead facts "as to time, place, and substance of the defendant's alleged" fraud", specifically "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."" <u>United States ex rel. Clausen v. Lab Corp. of Am.</u>, 290 F.3d 1301, 1310 (11th Cir. 2002)(citations omitted).

5811733 (N.D. Ala. Dec. 7, 2021 (citing Montgomery Rubber & Gasket Co. v. Belmont Machinery Co., 308 F. Supp. 2d 1293, 1299 (M.D. Ala. 2004)). "[T]o sufficiently plead fraudulent deceit, Plaintiff must allege facts to show that he was injured by a willful or reckless misrepresentation of material fact by Defendant .... and that, in making the misrepresentation of a material fact, Defendant ... intended to deceive Plaintiff." Stewart v. Argos Ready Mix, LLC, 2016 U.S. Dist. LEXIS 151975, 2016 WL7238915, *10 (M.D. Ala. Nov. 1, 2016). And a Section 6-5-102 fraudulent suppression claim provides: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." To state a viable claim for fraudulent suppression, a plaintiff must allege that: (1) the defendant(s) possessed a duty to disclose an existing material fact; (2) the defendant(s) concealed or suppressed that material fact; (3) the defendant(s) suppression induced plaintiff to act or refrain from acting; and (4) plaintiff suffered actual damage as a proximate result. Garber, 2021 U.S. Dist. LEXIS 233785, 2021 WL 5811733 at *16.

Baugh v. Austal USA, LLC, 2023 U.S. Dist. LEXIS 62210, 2023 WL 2873381 (S.D. Ala. April 10, 2023).

In Plaintiffs' amended complaint, they allege a number of fraud related claims, namely in Count V, Plaintiffs allege fraudulent misrepresentation in violation of §6-5-101, in Count VI, Plaintiffs allege fraudulent suppression of material facts in violation of §6-5-102, in Count VII, Plaintiffs allege deceit of material facts in violation of §6-5-103, and in Count VIII, Plaintiffs allege deceit-fraudulent deceit of material facts in violation of §6-5-104. (Doc. 9 at 29-32). According to Plaintiffs, Defendants willfully and/or recklessly mispresented to

its employees regarding DOVID-19 relief funding, willingness to engage in the interactive process for accommodations, statistics or data reported weekly from the facilities, and/or as to the specific reasons for rejection of exemption requests and proffered explanations for justifying discharge. (Id. at 29.). Plaintiffs further contend that "[s]uch misrepresentations and omissions of material facts were reasonably and detrimentally relied upon by Defendants' employees, including Plaintiffs, and that Defendants engaged in actions to suppress, conceal or hide the truth of these facts from their employees, Plaintiffs and other third parties". (Id. at 30).

Additionally, Plaintiffs allege, in paragraph 71 of their amended complaint, that throughout 2021, Defendants made several misrepresentations, written and/or oral, to Plaintiffs and other employees, that Plaintiffs reasonably relied upon to their detriment. Plaintiffs list the alleged misrepresentations as follows:

> (i)     misrepresenting the need for COVID-19 relief funds that were obtained through the CARES Act, DPA Title III, and other sources of supplemental legislation to Alabama and federal governments by eliciting incorrect or inconsistent statements regarding actual statistics at each facility; (ii) misrepresenting to their employees, Plaintiffs, or third parties that Defendants were not discriminating against its employees and otherwise compliant with applicable equal opportunity employment laws or their own internal policies; (iii) misappropriation of COVID-19 funds and

government grants specifically with the purpose
of protecting jobs, mitigating the effects of
COVID-19, and protecting the health and safety
of the most vulnerable persons; (iv) engaging in
unfair business competition practices after
receiving such COVID-19 funds across Defendants'
businesses across its facilities to better
position itself in the competitive market and
withholding the funds from the health and safety
of employees and residents; (v) failing to
participate in the accommodation process in a
manner that should be consistent with the law;
(vi) engaging in the conduct to obtain millions
of dollars of COVID-19 relief and Government
grants among its facilities by universally
rejecting Plaintiffs accommodation requests,
which increased Defendants compliance statistics
regarding vaccine percentages; (vii) requiring
their managers, supervisors, and/or agents to
unknowingly engage in unlawful business conduct
by misrepresenting the reasons to HR staff
members and having to justify termination of
Plaintiffs; and/or (viii) engaging in actions
that forced dissenting employees to resign or
terminated employees before their annual bonuses
were set to be paid out.

(Id. at 21-22).

As asserted by Defendants, Plaintiffs' fraud related
allegations fail to state a claim upon which relief can be granted.
(Doc. 12 at 20-23). As a preliminary matter, the undersigned finds
that the amended complaint does not set forth the actual
misrepresentations that was purportedly made to each Plaintiff,
who made the misrepresentations, when the misrepresentations were
made and any reliance by any of the Plaintiffs. For instance,
Plaintiffs allege, in a conclusory fashion, that Defendants made
misrepresentations regarding Covid Funding; however, the amended

complaint does not set forth the misrepresentation regarding Covid funding that was made, who made the misrepresentation, when it was made and to whom it was made. Similarly, Plaintiffs allege that Defendants misrepresented Covid-19 statistics; however, the amended complaint does not set forth the misrepresentation that was made, who made the misrepresentation, when it was made and to whom it was made. Moreover, Plaintiffs do not allege facts that suggest that they reasonably relied upon the purported misrepresentations. While Plaintiffs assert that Defendants misrepresented that they were willing to accommodate Plaintiffs' exemption requests, and also misrepresented the reasons for Plaintiffs' terminations, the amended complaint offers no facts that suggest any reasonable reliance by Plaintiffs. Plaintiffs have likewise failed to set forth any facts suggesting that Defendants had a duty to disclose material facts yet failed to do so, and they have further failed to offer any facts that plausibly suggest that Plaintiffs reasonably relied upon these unknown facts to their detriment. Accordingly, Plaintiffs' fraud claims are due to be dismissed.

### 2. Civil Conspiracy

Defendants contend that Plaintiffs' civil conspiracy claim is also due to be dismissed because Plaintiffs have not alleged a plausible underlying tort, and because Plaintiffs have not alleged interaction between the Defendants. (Id. at 23-24). Defendants

further note that while Plaintiffs allege that the Defendants are inter-related, wholly related business entities are incapable of conspiring with one another. (Id.)

In the civil conspiracy count of Plaintiffs' Amended complaint, Plaintiffs reallege paragraphs 1-74, and contend that "Defendants mutually agreed to engage in the creation, implementation, and action of such a scheme to better position Defendant in the competitive market and remove any dissenting employee, regardless of their fundamental rights." (Doc. 9 at 32). And, in their response to Defendants' motion to dismiss, Plaintiffs attempt to bolster their claim by asserting that "the senior directors and/or officers of Acts, PRC, and Westminister Village "mutually agreed to engage in the creation, implementation, and action of such a scheme to better position Defendant in the competitive market and remove any dissenting employee, regardless of their fundamental rights". (Doc. 25 at 26).

In Alabama, the elements of civil conspiracy are 1) a concerted action by two or more persons 2) to achieve an unlawful purpose or a lawful purpose by unlawful means. Ex parte Maint. Grp., Inc., 261 So. 3d 337, 347 (Ala. 2017). See also Majdalani, 2022 U.S. Dist. LEXIS 180206, 2022 WL 4596349 at *4 (same). However, as noted by the Eleventh Circuit in McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc):

The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. The doctrine is based on the nature of a conspiracy and the legal conception of a corporation. It is by now axiomatic that a conspiracy requires a meeting of the minds between two or more persons to accomplish a common and unlawful plan. See Bivens Gardens Office Bldg., Inc. v. Barnett Banks Inc., 140 F.3d 898, 912 (11th Cir.1998) (explaining that a civil conspiracy ordinarily requires "an agreement between two or more people to achieve an illegal objective, an overt act in furtherance of that illegal objective, and a resulting injury to the plaintiff"). However, under basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 603 (5th Cir.1981); see also United States v. Hartley, 678 F.2d 961, 970 (11th Cir. 1982). Therefore, just as it is not legally possible for an individual person to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself. See Dussouy, 660 F.2d at 603 (noting that "the multiplicity of actors necessary to conspiracy" is negated when the agents' acts are attributed to the corporation and the corporation and its agents are viewed as a single legal actor); Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir.1952) (explaining that "[i]t is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation").

In this action, Plaintiffs essentially allege that the three corporate Defendants are alter egos of each other, and that their senior officers and/or directors conspired with each other to violate Plaintiffs' employment rights. Assuming Plaintiffs are

correct, they cannot establish a civil conspiracy because of the intracorporate conspiracy doctrine, which provides that a corporation cannot conspire with itself. Southern v. Pfizer, Inc., 471 F. Supp. 2d 1207, 1220-1221 (N.D. Ala. Jun. 23, 2006) ("[i]t is 'not legally possible' for ... [corporate employees], acting as agents of [a corporation] ... and within the scope of their employment, to conspire with one other or with ... [the corporation][]"). See also Seals v. Leath, 2019 U.S. Dist. LEXIS 219240, 2019 WL 6997398, at *7 (M.D. Ala. Dec. 18, 2019) ("[T]here is little doubt that the Alabama Supreme Court would apply the intracorporate conspiracy doctrine in the same way the Eleventh Circuit has."); White v. City of Athens, 169 F. Supp. 3d 1254, 1269 (N.D. Ala. 2016)("[T]he Court has little difficulty concluding that, if presented directly with the issue, the Alabama Supreme Court would hold that the intracorporate conspiracy doctrine applies to public entities."). Plaintiffs have argued that although the three corporate Defendants are distinct legal entities, they essentially operate as one and the same, and jointly made the decisions relating to Plaintiffs' employment. These assertions fail to establish a plausible conspiracy claim[5]. This

---

[5] And, a searching review of Plaintiffs' complaint fails to reveal the identity of the individuals who purportedly executed the conspiracy or the specific acts they are alleged to have undertaken. Plaintiffs' vague and conclusory assertions that Defendants conspired against them are simply not sufficient to make out a plausible conspiracy claim under Alabama common law.

is particularly true where the record is devoid of allegations of any acts untaken by persons or entities outside of this group of Defendants who Plaintiffs argue should essentially be treated as one and the same. Thus, Plaintiffs' conspiracy claim should fail.

### 3. Wantonness

Defendants argue that Plaintiffs' conclusory allegations regarding wantonness provide no notice to Defendants of the basis for this claim; thus, the claim should be dismissed. (Doc. 12 at 24-25). In their amended complaint, Plaintiff allege that:

> Defendants' actions are wanton because they were carried out with such a reckless or conscious disregard of the fundamental rights of others as well as the health and safety of these individuals . . . Defendants' conduct to disregard the health and safety of its employees and residents, undertake a multiple of discriminatory acts taken against its own employees, and misrepresentations and suppression of such misrepresentation was wanton in nature.

(Doc. 9 at 33).

And, in Plaintiffs' response to Defendants' motion to dismiss, Plaintiffs allege that "Defendants acted in unison, coordinated to make sure their actions were not discovered and that their conduct was severe, pervasive, and intentional harassment. (Doc. 25 at 27).

"Alabama law provides no common-law tort claim for .... disability discrimination in employment[.]" Hand v. University of Ala. Bd. of Trustees, 304 F.Supp.3d 1173, 1183 (N.D. Ala. 2018). And "[t]he tort underlying a claim of wantonness cannot be based

on discrimination[.]" <u>Williams v. Daiichi Sankyo, Inc.</u>, 2012 U.S. Dist. LEXIS 118077, 2012 WL 3627765, *4 (N.D. Ala. Aug. 21, 2012). <u>See also</u> <u>Hand v. Univ. of AL Board of Trustees</u>, 304 F. Supp. 3d 1173, 1183 (N.D. Ala. 2018) ("Alabama law provides no common-law tort claim for sex or disability discrimination in employment. . ."); <u>Edwards v. Prime, Inc.</u>, 2008 U.S. Dist. LEXIS 112644, 2008 WL 939388 at 11 (N.D. Ala. Dec. 11, 2008) (Neither discrimination nor harassment constitutes a common tort.).

In this action, Plaintiffs' wantonness claim is based on the same facts underlying their Title VII discrimination and harassment claims. However, as the above-referenced cases make clear, Alabama does not provide a common law tort for discrimination and harassment; thus, Plaintiffs' wantonness claim is not actionable. <u>See</u> <u>Baugh v. Austal USA, LLC</u>, 2023 U.S. Dist. LEXIS 62210, 2023 WL 2873381 (denying as futile motion to add a wantonness claim based on alleged Title VII discrimination and harassment.)

### 4. Breach of Contract

Defendants assert that Plaintiffs claim for breach of contract, and violation of an implied covenant of good faith should be dismissed because Plaintiffs were at-will employees and Alabama does not recognize a claim for breach of the implied covenant of good faith absent breach of a specific, express term of the contract. (Doc. 12 at 26). Defendants further assert that Alabama

courts prohibit a breach of implied covenant of good faith claim sounding in tort, except in the insurance context. (Id.).

Plaintiffs acknowledge that they were at-will employees but argue that there is nevertheless "an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." (Doc. 25 at 27-28). According to Plaintiffs, the implied covenant of good faith and fair dealing is applicable to this case because Defendants' directors and officers had a fiduciary duty to the Plaintiffs and violated said duty by their objectively severe and pervasive discriminatory conduct to enforce their Vaccination policy and fraudulent misrepresentations to further coerce compliance. (Id. at 28).

Generally, "[u]nder Alabama law[] an employment relationship is terminable at will by the employer or the employee unless 'there is an express and specific contract for lifetime employment or employment for a specific duration' Howard v. Wolff Broadcasting Corp., 611 So.2d 307, 310 (Ala. 1992); Clark v. America's First Credit Union, 585 So.2d 1367, 1369 (Ala. 1991)." Williamson v. Wal-Mart Assocs., Inc., 2013 U.S. Dist. LEXIS 64427, 2013 WL 1909197, *7 (N.D. Ala. Apr. 16, 2013), Report & Recommendation adopted, 2013 U.S. Dist. LEXIS 64093, 2013 WL 1909422 (N.D. Ala. May 6, 2013). See also Davis v. City of Montevallo, 2023 Ala. LEXIS 7, 2023 WL 180252 (Ala. 2023) ("[T]he rule is well settled

in Alabama that an employee contract at will may be terminated by either party with or without cause or justification."); Brewer v. Freightcar Ala., LLC, 2021 U.S. Dist. LEXIS 71238, 2021 WL 1383285, *5 (N.D. Ala. Apr.13, 2021) ("Alabama law does not recognize a claim for breach of an at-will employment contract[]"). And there is no Alabama law which recognizes a claim of implied covenant of good faith arising out of an alleged wrongful discharge in the at-will employment context. See Baugh v. Austal USA, LLC, 2023 U.S. Dist. LEXIS 62210, 2023 WL 2873381, at *23 (S.D. Ala. Apr. 10, 2023).

In this case, Plaintiffs have not asserted, and the record does not reflect, the existence of a contract between Plaintiffs and Defendants. To the contrary, Plaintiffs acknowledge that they were at-will employees. Given the absence of an employment contract between the parties, there can be no breach of the covenant of good faith. Williamson v. Wal-Mart Assocs., Inc., 2013 U.S. Dist. LEXIS 64427, 2013 WL 1909197, at *7 (N.D. Ala. April 16, 2013) ("Before there can be a breach of a covenant of good faith and fair dealing, there must be an employment contract upon which to base this covenant."). Accordingly, this claim should be dismissed.

**5. Duty of loyalty**

Defendants argue that Plaintiffs' claim for violation of the duty of loyalty is improper because Alabama law does not impose

such a duty on employers.    (Doc. 12 at 27).    According to
Defendants, while Alabama law imposes a fiduciary duty of good
faith, loyalty, and fair dealing upon employees in favor of their
current employers, no such duty is imposed for employers.    (Id.)
In their response, Plaintiffs acknowledge that Alabama does not
recognize a duty of loyalty owed by employers to their employees,
and argues that Defendants do have a duty to not compromise the
health and safety of the facility, not commit unlawful conduct
contravening state and federal laws, not engage in discriminatory
practices, and not pressure employees to quit and/or terminate
employees who fail to do so despite their protected
characteristics.    (Doc. 2 at 28-29).

As observed by the Court in Baugh v. Austal USA, LLC, 2023
U.S. Dist. LEXIS 62210, 2023 WL 2873381:

> In Alabama, the duty of loyalty is a breach of
> fiduciary duty claim. See, e.g., Pruitt, 2019 U.S. Dist.
> LEXIS 41077, 2019 WL 1199837 at *11 (to plead a viable
> claim for breach of a duty of loyalty/fiduciary duty, a
> plaintiff must allege the existence of a fiduciary duty,
> breach of that duty, and damages proximately caused by
> the breach).    Typically, this claim concerns
> intracorporate matters/disputes and/or arises via a
> principal agent relationship whereby a fiduciary status
> imposes said duty (e.g., shareholder disputes, disputes
> among corporate officers, etc.). See, e.g., Gardner v.
> Cumis Ins. Soc., Inc., 582 So.2d 1094, 1096 (Ala. 1991)
> ("[t]he principal agent relationship is fiduciary by
> nature and imposes a duty of loyalty, good faith, and
> fair dealing on the part of the agent[]"); Jones v.
> Ellis, 551 So.2d 396, 401 (Ala. 1989) ("[i]n addition to
> owing the corporation and its shareholders a duty of
> care, a director also occupies a position of special
> trust in regard to the corporation and its shareholders,

which imposes upon him a duty of loyalty[]"). "The corporate fiduciary duty is divided into two parts: (1) a duty of care; and (2) a duty of loyalty ... The duty of loyalty ... prohibits faithlessness and self-dealing by corporate officers. See Massey, 601 So. 2d at 456. See also, *e.g.*, Alagold Corporation v. Freeman, 20 F. Supp. 2d 1305, 1310 (M.D. Ala. 1998) (duty of loyalty 'encompasses a duty to disclose information to those who have a right to know the facts'); Belcher v. Birmingham Trust National Bank, 348 F. Supp. 61, 82 (N.D. Ala. 1968) (the duty of loyalty of 'officers and directors are analogous to those of trustees. They are required to act with fidelity and in good faith, subordinating their personal interests to the interests of the corporation[]')." QORE Prop. Sciences, Inc. v. Civil Solutions, Inc., 2006 WL 8437067, *22 (N.D. Ala. Mar. 2, 2006). However, "a principal or employer is not the fiduciary of the agent or employee." Miller, 479 So. 2d at 720. Put simply, there is no cause of action in Alabama for an employer's breach of a duty to loyalty to an at will employee -- no such duty exists. See, *e.g.*, Catherine Fisk & Adam Barry, Contingent Loyalty and Restricted Exit: Commentary on the Restatement of Employment Law, 16 EMP. RTS. & EMP. POL'Y J. 413, 419 (2012) ("The employer owes no duty of loyalty to the employee and is free to pursue its self-interest by firing him[]").

In this case, Plaintiffs' duty of loyalty claim is premised on the mistaken belief that their former employers owed them a duty of loyalty by virtue of various federal statutes prohibiting discrimination and harassment in the employment context. Plaintiffs have cited no Alabama case law or authority that imposes a duty of loyalty on employers in favor of their at-will employees. Baugh v. Austal USA, LLC, 2023 U.S. Dist. LEXIS 62210, 2023 WL 2873381 ("Put simply, there is no cause of action in Alabama for an employer's breach of a duty to loyalty to an at will employee-

no such duty exists") (citations omitted). Thus, Plaintiffs'
allegations of discrimination and harassment do not suffice to
support a common law duty of loyalty claim in the at-will
employment context. Accordingly, this claim is due to be
dismissed.

### 6. Unjust Enrichment and Disgorgement

Defendants assert that Plaintiffs' unjust enrichment and
disgorgement claims are due to be dismissed. Defendants note that
in their amended complaint, Plaintiffs contend that "Defendants
and their "senior leadership" obtained "a significant benefit in
the form of financial compensation, continued job opportunities,
and lucrative Government funding opportunities that were obtained
through unlawful business activities at the detriment of
Plaintiffs and others situated, the American taxpayer, and the
state/federal government," and that this conduct constitutes
unjust enrichment." (Doc. 12 at 28). Defendants argue that
Plaintiffs do not having standing to assert such a claim, and that
the claim is not plausible because "[n]o cause of action for unjust
enrichment is cognizable where, as here, there is an express
contract between the parties." (Id.).

In Plaintiffs' response, they assert that Defendants'
directors and/or officers received personal awards as a result of
Plaintiffs' unlawful terminations, that Defendants disseminated
fraudulent misrepresentations weekly in all facilities and they

disregarded the health and safety of the facilities employees and residents. (Doc. 25 at 29). Plaintiffs contend that examples of the financial compensation received include "monetary compensation and continued job opportunities". (Id.). According to Plaintiffs, any Defendants and applicable director and/or officer who wrongfully benefitted from intentional or reckless acts should be compelled to forgo profits incurred. (Id. at 30).

Unjust enrichment and disgorgement are equitable remedies available only when there is no adequate remedy at law (such as a contract). Unjust enrichment is "quasi-contractual" used to create an implied contract. White v. Microsoft Corp., 454 F. Supp. 2d 1118, 1133 n. 24 (S.D. Ala. 2006). "To succeed on a claim of unjust enrichment, the plaintiff must show that ... the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." Flying J Fish Farm. v. Peoples Bank of Greenboro, 12 So. 3d 1185, 1193 (Ala. 2008); Mantiply v. Mantiply, 951 So. 2d 638, 655 (Ala. 2006) ("[i]in the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched.").

Disgorgement is "an equitable remedy that is intended to prevent unjust enrichment." S.E.C. v. Onterosso, 756 F. 3d 1326, 1337 (11th Cir. 2014). The remedy may not be used punitively, and

thus a causal connection must exist between the breach and the benefit sought to be disgorged. S.E.C. v. Blatt, 583 F.2d 1325, 1335 (5th Cir. 1978) ("[d]isgorgement is remedial and not punitive. The court's power to order disgorgement extends only to the amount [] by which the defendant profited from his wrongdoing[]"). The concept underlying disgorgement is that another received monies that should have been paid to Plaintiffs. Baugh v. Austal USA, LLC, 2023 U.S. Dist. LEXIS 62210, 2023 WL 2873381, at *25 (S.D. Ala. Apr. 10, 2023).

As best the Court can discern, the focus of Plaintiffs' unjust enrichment/disgorgement claims appears to be their assertion that Defendants engaged in unlawful workplace conduct and have profited as a result of said conduct. While Plaintiffs assert that Defendants profited at the expense of the American taxpayer, the amended complaint is devoid of any assertions that Defendants were paid monies that should have instead been paid to Plaintiffs. Throughout their amended complaint, Plaintiffs assert that they were injured as a result of Defendants' alleged discrimination, harassment, and the wrongful termination of their employment, and that they should be awarded damages for mental anguish, emotional pain and suffering and monetary and economic losses. These assertions regarding the damages being sought by Plaintiffs belie any assertion that Plaintiffs do not have an adequate remedy at law. Accordingly, Plaintiffs' unjust enrichment and disgorgement

claims are due to be dismissed.

**7. Officer and Director Liability claim.**

Defendants assert that Plaintiffs' officer and director liability claim is due to be dismissed because Plaintiffs were employees rather than shareholders of the Defendant corporations. Defendants further contend that even if Plaintiffs qualified as shareholders, their complaint fails to meet Federal Rule of Civil Procedure 23.1 pleading requirements for a derivative action. According to Defendants, Rule 23.1 requires that a complaint alleging a derivative action be verified, allege that the plaintiff was a shareholder and "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and . . . the reasons for not obtaining the action or not making the effort." (Doc. 12 at 31).

In their response, Plaintiffs do not contest Defendants' assertion that they are not shareholders of the Defendant corporations and have not satisfied the pleading requirements of Fed. R. Civ. P. 23.1(b). (Doc. 25 at 30). Instead, Plaintiffs merely allege that they believe that Defendants' directors and officers who wrongfully benefitted from the universal termination of unvaccinated individuals on the basis of their religious and/or disability protected characteristics should be held responsible for their tortious actions." (Id.).

Plaintiffs' amended complaint does not make clear what case or statutory authority Plaintiffs rely upon to support this claim. Upon careful consideration of the allegations in Plaintiffs' amended complaint and their response, it appears that Plaintiffs are seeking to replead their federal discrimination claims against Defendants. As such, those claims are already encompassed within Plaintiffs' federal claims; thus, this claim should be dismissed as duplicative.

**E. CONCLUSION**

For the reasons discussed herein, the undersigned hereby **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 12) be **granted in part and denied in part** as follows: Plaintiffs' Title VII claims of disparate treatment, hostile work environment, and harassment on religious grounds (Counts II, III, and IV) should be dismissed for failure to exhaust administrative remedies. Plaintiffs' state law claims should be dismissed for failure to state a claim upon which relief can be granted.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should

note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**ORDERED** this **31st** day of **August, 2023.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE